# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

DONALD ALVA OLIVER,

        Petitioner,

v.

BRIAN WILLIAMS, *et al.*,

        Respondents.

Case No. 2:17-cv-03008-MMD-DJA

ORDER

## I. SUMMARY

This is a habeas corpus action under 28 U.S.C. § 2254. Respondents have filed a motion to dismiss (ECF No. 12). Petitioner Donald Alva Oliver has not opposed the motion to dismiss, but he has filed a motion for stay and abeyance (ECF No. 18). Respondents oppose that motion (ECF No. 19). The Court agrees with Respondents that Oliver has not exhausted his state-court remedies for all of his grounds. The Court finds that Oliver has not shown good cause for his failure to exhaust those state-court remedies. Consequently, the Court grants Respondents' motion to dismiss and denies Petitioner's motion for stay and abeyance.

## II. BACKGROUND

The Court takes the statement of facts from the order denying Oliver's state post-conviction habeas corpus petition:

### A. GEORGE WILLIAMS

On June 27, 2012, George Williams ("Williams") drove to the Village of Karen Apartments located at 2746 Jennydiane Drive in Las Vegas. The purpose of Williams' visit was to smoke marijuana and drink alcohol with two females he met the previous week. Williams drove to this location after receiving a text message and telephone call from one of the females telling Williams to meet them there. Upon his arrival, Williams parked his car and the two females approached his vehicle.

///

A very short time later, Defendant approached Williams' driver's side window, pointed a gun at Williams' left temple and yelled "get the fuck out of the car." Williams exited his vehicle and laid down on the road. As this occurred, a white SUV pulled in front of Williams' car to block his exit. A Hispanic or Caucasian man (hereinafter referred to as Defendant's "accomplice") exited the SUV. The two females Williams had been speaking with casually walked away.

As Defendant stood over Williams with the gun, Defendant's accomplice searched Williams' vehicle. After searching the vehicle, Defendant's accomplice took the gun from Defendant so that Defendant could do the same. As Defendant's accomplice held the gun to Williams' head, Williams pled for his life.

Defendant and his accomplice took Williams' car keys; his house key; his cell phone; Williams' wallet which contained his identification, credit cards and $100 in cash; a gold and diamond ring given to Williams by his grandfather; and a baseball bat. Defendant and his accomplice then got in the white SUV and drove away as Defendant continued to point the gun at Williams until he was out of sight.

Williams ran from the area and sought help from a lady across the street who called the police on Williams' behalf. Officers from the Las Vegas Metropolitan Police Department responded to the scene and interviewed the victim/witness. Crime scene analyst, Shandra Lynch ("CSA Lynch") later arrived and dusted Williams' vehicle for prints. CSA Lynch lifted a palm print from the exterior of the rear driver's side door, which was later identified by latent print examiner, Lori Hanes, as Defendant's right palm print. CSA Lynch also recovered a cartridge on the ground which was located by one of the responding officers. [Footnote 1: State's witness, Kyle Newsome testified that immediately prior to the robbery, he saw a black male pull back the slide of a handgun in the same vicinity where the cartridge was found.]

Sometime after the incident, Williams was visited by Detective Patrick Flynn. Williams was shown two photo line-ups and he identified Defendant as the man who approached him with the gun. Williams was 80-85% sure of Defendant's identity.

On the early morning of June 28, 2012, Defendant took a gold and diamond ring to the Gold and Silver Pawn Shop in Las Vegas, where he received $300.00 dollars in exchange for the ring. The ring was located by Detective Flynn and subsequently identified by Williams as the ring taken from him on June 27, 2012.

**B.     BELINDA [KAPPERT]**

On July 10, 2012, Belinda [Kappert] ("[Kappert]") received a text message from [S.S.]. At that time, [S.S.] lived at the Devonshire Apartments located at 4640 Vegas Valley Drive in Las Vegas. [S.S.] texted [Kappert] on behalf of his friend, Esteban, because Esteban needed a ride. [S.S.] also offered to sell [Kappert] prescription pain pills which he had done in the past. [Kappert] told [S.S.] she would be on her way in 20 minutes. Prior to her arrival, [S.S.] told Defendant that [Kappert] was coming to Devonshire Apartments.

///

2

> Upon her arrival, [Kappert] drove to the back of the apartment complex and parked her car. [Kappert] had her head down and was attempting to send a text message when she heard her passenger door open. She looked up to see Defendant getting into the front passenger seat of her car. Defendant shut the door and proceeded to grab [Kappert's] belongings. As [Kappert] struggled with Defendant in an effort to keep her purse, [Kappert] realized that a second man got into the backseat of her car. The unknown male hit [Kappert] over the head, stating "[l]et go of the purse, bitch." [Kappert] released her purse and Defendant and the unknown male fled, with it. [Kappert] went to the leasing office and called police.
>
> After this incident Defendant went to [S.S.'s] apartment and gave him money and pills that he obtained from [Kappert]. [S.S.] was subsequently prosecuted for conspiracy to commit robbery.
>
> A couple of days later, detectives visited [Kappert] with a photo line-up. [Kappert] identified Defendant as the man who got into the front passenger seat of her vehicle. [Kappert] was 100% certain about Defendant's identity.
>
> Defendant was later arrested at his home, located at 4450 Karen Avenue in Las Vegas. Defendant's home was a mere one-half mile from the Devonshire Apartments and one-half mile from the Village of Karen Apartments.

(ECF No. 7 at 20–22.)[1]

## III. LEGAL STANDARD

Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

"[A] petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings *specifically* as federal claims. In short, the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *amended*, 247 F.3d

---

[1] The state district court misspelled Kappert's last name as "Kappart." *See* (ECF No. 13-40 at 98 (Kappert spelling her own last name).). The Court has redacted S.S.'s name from the state district court's statement of facts because he was a minor at the time of the crime. *See* LR IC 6-1(a)(2).

1  904 (9th Cir. 2001). Citation to state case law that applies federal constitutional principles will also suffice. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (*en banc*). "The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citations omitted).

**IV.     DISCUSSION**

**A.     GROUND ONE IS PARTIALLY UNEXHAUSTED**

On direct appeal, Oliver alleged two violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Before trial, on March 21, 2013. Oliver had requested all statements, including inconsistent statements, by prosecution witnesses. Oliver also had requested all photographic lineups presented to witnesses in this case. Before a hearing on the matter on March 27, 2013, the prosecutor and Oliver's counsel reviewed the file and determined that the prosecution had disclosed all the documents that Oliver had requested. (ECF No. 14-1 at 15–16.)

According to Oliver on direct appeal, that was inaccurate. First, around 4:30 p.m. on May 17, 2013, the Friday before the start of trial, defense counsel learned that prosecution witness S.S. had made an inconsistent statement that had not been in the prosecution's file. (*Id.* at 16–17.) Second, on the final day of trial, police officer Cori Rapp testified that prosecution witness Belinda Kappert had identified Oliver's co-conspirator, who was in the back seat of her car, in a photographic lineup. This was the first time that Oliver's counsel knew about this lineup. (*Id.* at 18–19.)

The Nevada Supreme Court did not grant relief on the *Brady* claims. (ECF No. 14-5 at 2–3.)

///
///
///
///

4

Ground one of the federal petition contains two issues of federal law. First, Oliver alleges the *Brady* violations that he had alleged on direct appeal.[2] (ECF No. 7 at 3.) Second, Oliver claims that the judge deciding the *Brady* claim displayed partiality. (*Id.* at 3, 11 (continuation from page 3).)

The *Brady* claim in ground one is exhausted because Oliver presented it on direct appeal. The judicial partiality claim in ground one is not exhausted because Oliver never has presented it in state court, let alone to the Nevada Appellate Courts.

### B. GROUND TWO IS PARTIALLY UNEXHAUSTED

On direct appeal, Oliver argued that the state district court should have severed the counts into two separate trials. He presented the argument under the Fifth and Fourteenth Amendments' guarantees of due process of law. (ECF No. 14-1 at 23.) In ground two of the federal petition, Oliver presents the same claim. (ECF No. 7 at 5.) That part of ground two is exhausted. In ground 2, Oliver also argues that the state district court's refusal to sever the counts violated the Sixth Amendment and the guarantee of having an impartial judge. (*Id.*) This part of ground two is not exhausted because Oliver never has presented it in state court, let alone to the Nevada Appellate Courts.

### C. GROUND THREE IS UNEXHAUSTED

Ground three is a claim of ineffective assistance of trial counsel. Oliver argues that trial counsel should have impeached prosecution witness George Williams because Williams testified that he had circled Oliver's picture in a photographic lineup, but Williams actually had not circled Oliver's picture. (*Id.* at 7.) Oliver raised the same claim in ground three of his proper-person state post-conviction habeas corpus petition. (ECF No. 14-18

///

///

///

---

[2] The Court does not agree with Respondents' argument that Petitioner does not raise a *Brady* claim in ground one. It is true that ground one does not contain any mention of *Brady*. However, Petitioner need not cite case law in his grounds for relief, and the instructions for the habeas corpus petition form discourage it. Liberally construed, the allegations in ground one are facts supporting a *Brady* claim.

at 31–34.) The state district court denied the claim. (ECF No. 14-39 at 12–13.) However, Oliver did not appeal the denial of that claim.[3] Ground three is not exhausted.

### D. GROUND FOUR IS UNEXHAUSTED

Ground four also is a claim that the trial court, the prosecution, and defense counsel allowed George Williams and Belinda Kappert to give knowingly perjured testimony. Oliver raised the same claim in ground seven of his proper-person state post-conviction petition. (ECF No. 14-19 at 3–6.) The state district court denied the claim. (ECF No. 14-39 at 17.) However, Oliver did not appeal the denial of that claim. Ground four is not exhausted.

### E. THE COURT DENIES OLIVER'S MOTION FOR A STAY

#### 1. Legal Standard

To stay this action while Oliver litigates the unexhausted issues in state court, Oliver must show "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

Good cause under *Rhines* is no more strict than the good cause required under *Martinez v. Ryan*, 566 U.S. 1 (2012); *Blake v. Baker*, 745 F.3d 977, 983–84 (9th Cir. 2014). *Martinez*, in turn, allows the excuse of a procedurally defaulted claim of ineffective assistance of trial counsel upon a showing of ineffective assistance of counsel, or lack of counsel, in the initial post-conviction proceedings. 566 U.S. at 14.

#### 2. Oliver Has Not Shown Good Cause

##### a. Oliver Has Not Shown Good Cause for Claims Not in the Petition

Oliver's motion to stay has no connection with the unexhausted claims in the current petition. Oliver argues that he has good cause to stay the action because post-conviction

///

---

[3] Oliver raised two claims of ineffective assistance of trial counsel on appeal from the denial of his petition. First, Oliver claimed that trial counsel was ineffective on impeaching prosecution witness Belinda Kappert, not George Williams, regarding a photographic lineup. (ECF No. 14-43 at 43–48.) Second, Oliver claimed that trial counsel failed to subpoena witnesses who would have testified to facts indicating that another person gave petitioner Williams' ring to pawn it at a pawn shop. (*Id.* at 48–52.)

counsel failed to investigate and raise the following claims of ineffective assistance of trial counsel:

> 1. Trial counsel did not investigate and argue how Oliver's palm print found on Williams' car was from an encounter two weeks prior to the robbery of Williams.
>
> 2. Trial counsel did not investigate and present as witnesses two people who would have corroborated Oliver's claim that he had left his palm print on Williams' car two weeks prior to the robbery of Williams.
>
> 3. Trial counsel failed to investigate the benefits that the prosecution gave to Belinda Kappert in exchange for her testimony against Oliver.
>
> 4. Trial counsel failed to investigate the benefits that the prosecution gave to S.S. in exchange for his testimony against Oliver.

(ECF No. 18 at 11–16.) Oliver also asks for discovery and evidentiary hearing to develop both the ineffective assistance of post-conviction counsel and these four claims of ineffective assistance of trial counsel. *Id.* at 17–19. These four claims are unexhausted, because Oliver did not present them to any level of the state courts. More important for the question of good cause for the stay of this action, Oliver did not present these claims in his federal habeas corpus petition. These claims appear for the first time in his motion for a stay.

These claims are untimely. Oliver had one year from the finality of his judgment of conviction to file a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1)(A). The time that Oliver's state post-conviction petition was pending does not count toward the one-year limit. 28 U.S.C. § 2244(d)(2). However, the time that this current federal habeas corpus action has been pending does count toward the one-year limit. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). This action was open for more than a year before Oliver filed his motion for a stay. The grounds are untimely unless they relate back to the original petition. Relation back is allowed "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts . . . ." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). The facts in the claims in the motion to stay appear nowhere in the original petition. No common core of operative fact exists, and the new claims are untimely.

Staying the action to permit Oliver to exhaust these new claims would be futile. Even if Oliver could convince the state courts to excuse the state-law bars against untimely, successive, and abusive petitions, the new claims still would be untimely under 28 U.S.C. § 2244 once Oliver returns to this Court.[4]

### b. Oliver Has Not Shown Good Cause for the Claims That Are in the Petition

Although Oliver has made no argument for good cause for the failure to exhaust the claims that are in the petition, the Court will adapt his argument based upon *Martinez*. However, that argument still would fail.

*Martinez* has limits. First, the Supreme Court has reaffirmed that *Martinez* is limited only to claims of ineffective assistance of trial counsel. *Davila v. Davis*, 137 S. Ct. 2058 (2017). Grounds 1 and 2 are claims of trial-court error, not claims of ineffective assistance of trial counsel. Ground 4 is a claim that the trial court, the prosecution, and the defense counsel all allowed Williams and Kappert to give knowingly perjured testimony, so at least part of ground 4 is not a claim of ineffective assistance of trial counsel. *Martinez* cannot provide good cause for the failure to exhaust these grounds.

Second, the Supreme Court limited *Martinez* to the initial post-conviction review proceedings. In Nevada, this would be the state district court's consideration of the post-conviction habeas corpus petition. *Martinez* does not apply to claims of ineffective assistance of trial counsel that are procedurally defaulted, or, as in this case, unexhausted, because they were not raised on appeal from the denial of the post-conviction petition. 566 U.S. at 16. Ground 3 and ground 4 are not exhausted because Oliver did not raise

///

---

[4]The Court has considered whether equitable tolling could save the new claims in this court. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Oliver was litigating his state post-conviction habeas corpus petition, and then he filed his federal habeas corpus petition soon after the state-court proceedings ended. No extraordinary circumstances thus prevented Oliver from mentioning these new claims long before he filed his motion for a stay.

the same claims on appeal from the denial of the state post-conviction petition, but he did raise the claims in that petition and received a ruling on the merits of those claims from the state district court. Consequently, *Martinez* cannot provide good cause for the failure to exhaust grounds three and four.

**F.     OLIVER MUST CHOOSE WHAT TO DO**

The federal petition (ECF No. 7) is mixed, containing both claims exhausted in state court and claims not exhausted in state court, and it is subject to dismissal. *See Rose v. Lundy*, 455 U.S. 509, 521–22 (1982); *Szeto v. Rushen*, 709 F.2d 1340, 1341 (9th Cir. 1983). The Court is denying Petitioner's motion for a stay. Oliver may voluntarily dismiss the unexhausted grounds one in part, two in part, three, and four, and proceed with the exhausted parts of grounds one and two, or he may voluntarily dismiss this action without prejudice while he returns to state court to exhaust grounds one in part, two in part, three, and four. If Oliver chooses the second option, the Court makes no assurances about any possible state-law procedural bars or the timeliness of a subsequently filed federal habeas corpus petition.

**V.     CONCLUSION**

It therefore is ordered that Respondents' motion to dismiss (ECF No. 12) is granted.

It further is ordered that Petitioner's motion for stay and abeyance (ECF No. 18) is denied.

It further is ordered that Petitioner will have 30 days from the date of entry of this order to do one of the following: (1) inform this Court in a sworn declaration that he wishes to dismiss the unexhausted part of ground one, the unexhausted part of ground two, ground three, and ground four of his petition (ECF No. 7), and proceed only on the remaining grounds for relief, or (2) inform this court in a sworn declaration that he wishes to dismiss this action to return to state court to exhaust his state remedies. Failure to comply will result in the dismissal of this action.

It further is ordered that if Petitioner elects to dismiss the aforementioned grounds of his petition (ECF No. 7) and proceed on the remaining grounds, Respondents must file

and serve an answer, which must comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, within 45 days after petitioner serves his declaration dismissing those grounds. Petitioner will have 45 days from the date on which the answer is served to file and serve a reply.

DATED THIS 2nd day of March 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE