UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DONALD ALVA OLIVER,<br><br>Petitioner,<br>v.<br>WILLIAM GITTERE,[1] *et al.*,<br><br>Respondents. | Case No. 2:17-cv-03008-MMD-DJA<br><br>ORDER |

**I.     SUMMARY**

*Pro se* Petitioner Donald Alva Oliver, who is serving an aggregate sentence of 12 to 30 years after being found guilty of various charges stemming from two robberies, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF No. 13-57.) This matter is before the Court for adjudication of the merits of the remaining grounds in Oliver's petition, which allege that the prosecution failed to turn over exculpatory evidence and the charges should have been severed. (ECF No. 7 ("Petition").) For the reasons discussed below, the Court denies the Petition and a Certificate of Appealability.

**II.     BACKGROUND**[2]

On June 27, 2012, around 7:00 p.m., George Williams went to the Village at Karen apartment complex in Las Vegas, Nevada "to meet two girls . . . to drink and smoke weed." (ECF No. 13-36 at 31, 35-36.) After parking in the complex's parking lot, Williams spoke

---

[1]The state corrections department's inmate locator page states that Oliver is currently incarcerated at Ely State Prison. William Gittere is the warden for that facility. At the end of this order, the Clerk of Court is directed to substitute Gittere as a Respondent for the prior Respondent Brian Williams under Rule 25(d) of the Federal Rules of Civil Procedure.

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. The Court's summary is merely a backdrop to its consideration of issues presented in the case. Any absence of mention of a specific piece of evidence does not signify the Court overlooked it in considering Oliver's claims.

with one of the women through his vehicle's window. (*Id.* at 41.) Following that short conversation, Oliver "approached [the] driver's side . . . with a gun telling [Williams] to get out [of] the car." (*Id.*) Williams complied. (*Id.* at 43.) While Williams was lying on the ground with Oliver pointing a gun at his head, "a white Tahoe [SUV] pulled directly in front of" Williams' vehicle, blocking it in the parking spot, and a man exited the vehicle and started searching William's vehicle. (*Id.* at 45-46.) Oliver then handed the gun to the other man and started searching William's vehicle. (*Id.* at 47.) After taking William's car keys, house key, cell phone, wallet, heirloom ring, and hat, Oliver and the other man entered the SUV and drove away. (*Id.* at 51, 57.)

Williams identified Oliver from a photographic lineup but was unable to identify the second robber. (ECF No. 13-39 at 112, 115.) Oliver's right palm print was found at the crime scene. (ECF No. 13-40 at 63.) Oliver pawned William's heirloom ring shortly after the robbery, but it was recovered by the Las Vegas Metropolitan Police Department ("LVMPD") and returned to Williams. (ECF Nos. 13-39 at 116; 13-40 at 29.)

Two weeks later, on July 10, 2012, S.S., who was 16 years old, was with Oliver at S.S.'s apartment in Las Vegas, Nevada. (ECF No. 13-40 at 79, 81.) S.S. told Oliver that he was planning to sell Belinda Kappert some prescription painkillers. (*Id.* at 84-85.) Oliver told S.S. that he was going to rob Kappert. (*Id.* at 85.) Oliver later returned with "[m]oney and pills" that Oliver indicated he obtained from Kappert. (*Id.* at 86-87.)

Kappert testified that she was in her vehicle in the apartment complex's parking lot waiting to purchase painkillers when Oliver entered her vehicle from the front passenger door and another man entered her backseat and started "grabbing everything that [she] had out." (ECF Nos. 13-40 at 98; 13-41 at 3, 5.) Oliver and Kappert fought over Kappert's purse, but after Kappert was hit in the head, she let her purse go, and Oliver and the other man exited the vehicle and ran away. (ECF No. 13-41 at 3-4.) Kappert picked Oliver from a photographic lineup but testified that she was unable to identify the second robber. (*Id.* at 15-16; ECF No. 13-44 at 43-44.)

///

2

The jury found Donald Oliver guilty of two counts of conspiracy to commit robbery, robbery with the use of a deadly weapon, two counts of burglary, robbery, and battery with the intent to commit robbery. (ECF No. 13-57.) Oliver's challenge to his conviction was denied on direct appeal. (ECF No. 14-5.)

## III.     LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established United States Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established

///

3

law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV.   DISCUSSION

### A. Ground 1—alleged *Brady* violation

In the remaining portion of Ground 1, Oliver alleges that his Fifth and Fourteenth Amendment rights to due process were violated because the State of Nevada failed to disclose S.S.'s law enforcement interview and Kappert's identification of the second robber.[3] (ECF No. 7 at 3.)

#### 1.   Background Information

Prior to trial, Oliver moved to compel the disclosure of exculpatory evidence. (ECF No. 13-19.) Oliver specifically requested "[c]olor copies of the photo-lineups" and "any and all statements made by any State witness, or any other person, at any time that [were] in any manner inconsistent with the written and/or recorded statements previously provided to the defense." (*Id.* at 10.) The State opposed, responding in part, that it would provide copies of the photo-lineups and had provided copies of witness statements and reports. (ECF No. 13-21 at 6-7.) At a calendar call, Oliver's counsel reported that she had

---

[3]This Court previously found that the portion of Ground 1 alleging judicial partiality was unexhausted, and Oliver chose to abandon it. (ECF Nos. 21 at 5; 23.)

4

reviewed the discovery and "in talking with [the prosecutor], [she] th[ought] he was able to provide everything that [she had] requested." (ECF No. 13-26 at 3.)

On the first morning of trial, a Monday, Oliver's counsel told the state district court that she "received a telephone call from the district attorney's office" on "Friday at about 4:30 in the afternoon" indicating that the prosecutor learned from a detective that S.S. "had actually made a full taped interview" that was not disclosed to the defense. (ECF No. 13-31 at 6.) Oliver's counsel moved to exclude S.S.'s testimony and statement because "the testimony and th[e] information that[ was] contained in the voluntary statement [was] significantly different than what he initially told the police on the night of one of these incidents." (*Id.* at 6-7.)

The prosecutor responded that he did not learn of the statement until he "had pretrialed [sic] one of [the] officers," but "[a]s soon as [he] learned of this statement, [he] called [Oliver's counsel] and told her about it." (*Id.* at 7.) The prosecutor also argued that the statement was not exculpatory, and S.S. had been properly noticed as a witness. (*Id.*) Oliver's counsel rebutted:

> My concern is I - - I do believe that it's potentially exculpatory. He does, in the statement, just to give the Court a brief - - put some context on it. This witness indicates that he would call individuals to buy drugs. And then when they would come, he would contact my client and others to let them know that there was a potential robbery victim. That's his statement. There was also a police report that was attached because at one point he was arrested.
>
> My concern is, you know, he's a juvenile. Because I received this Friday afternoon, I haven't been able to obtain certified copies or get juvenile records. First of all, it's not like you can just go over and order juvenile records or get any of the outcome or what the - - you know, any of what happened in the juvenile court related to this case because he also was charged and pled to a conspiracy robbery is my understanding from what the district attorney has told me. But I don't have any of the details of what the conditions or if he was on probation, what those kind of things are in order to impeach him when he does testify if the Court was to allow it.
>
> So I think there are definitely some things. You know, he is possibly a suspect I would be able to point out and say, he's just trying to cover his own skin and that's why he's testifying and blaming my client in this situation. So those - - those are some of the, you know, things that I think

> for the defense why it's exculpatory and why I think it should be precluded because I haven't had the opportunity to be able to do that investigation.

(*Id.* at 8-9.) The state district court excluded S.S.'s interview statement but allowed S.S. to testify. (*Id.* at 10.)

On the fourth day of trial, during cross-examination of Officer Corie Rapp of the LVMPD, Oliver's counsel asked Rapp whether Belinda Kappert was shown any photographic lineups other than the one in which she identified Oliver. (ECF No. 13-44 at 53.) Rapp indicated that he had and that Kappert had identified the second robber. (*Id.*)

Oliver's counsel moved to dismiss the charges against Oliver or, alternatively, for a mistrial, explaining that she could have used this information to impeach Kappert. (ECF No. 13-44 at 58–59, 64.) Oliver's counsel elaborated: "[Kappert] testified at a grand jury, at a preliminary hearing, and [at the trial], all under oath, that she was not able to identify the person in the back[seat]. And now we're hearing for the first time she's circled someone." (*Id.* at 59.) The prosecutor argued that the evidence was not exculpatory because it "ha[d] nothing to do with" Oliver, whom Kappert identified before the second lineup. (*Id.* at 60-61.) Oliver's counsel rebutted that the evidence was exculpatory as impeachment evidence because Kappert's credibility and identifications were crucial and having this information may have "influence[d] the way that [she] proceeded with cross-examining [Kappert] and perhaps presenting [the] entire defense in this case." (*Id.* at 63.)

The state district court recessed and then explained the basis of its decision to deny Oliver's counsel's request:

> Since I don't do lots of criminal trials, I wanted to check with others that have more experience to decide if my decision in the case was consistent with what other criminal judges might do. So that being said, I agree that the information probably should have been turned over. I don't know that it's a Brady violation, because I don't know that it's exculpatory as it relates to your client. I do understand the argument that it may have changed the way that you presented your case, at least with regard to Belinda . . . Kappert. So I'm going to deny your request for a mistrial or dismissal. But if you would want to recall Ms. Kappert, or if you want to call her in your case, if you want to subpoena her for tomorrow, so that you can additionally cross-examine her on the inconsistencies, I'm okay with that.

6

(ECF No. 13-44 at 64–65.)

Oliver's counsel declined the option to recall Kappert. (ECF No. 13-44 at 66.)

### 2. Standard for a *Brady* claim

"[T]he suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Because a witness's "'reliability . . . may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The materiality of the evidence that has been suppressed is assessed to determine whether prejudice exists. *See Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Accordingly, "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678).

### 3. State court determination

In affirming Oliver's judgment of conviction, the Nevada Supreme Court held:

> First, appellant Donald Alva Oliver contends that the district court erred by denying his oral motion to dismiss or, alternatively, for a mistrial, based on the State's failure to turn over allegedly exculpatory evidence prior

7

to trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Oliver made his motion after the State's final witness, Officer Corie Rapp, testified about information not provided to the defense—that the victim of the robbery occurring on July 10, 2012, identified Oliver's coconspirator after reviewing a photographic lineup. We disagree with Oliver's contention.

Determining whether the State adequately disclosed information pursuant to *Brady* involves questions of both fact and law which we review de novo. *See State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 7-8 (2003). Here, the district court heard arguments from counsel and denied Oliver's motion. The district court stated that "the information probably should have been turned over," but ultimately found that the victim's identification of the second suspect in the robbery was not exculpatory. Moreover, we conclude, in light of the evidence presented, there is not a "reasonable possibility" that a more timely disclosure of the information in question would have affected the outcome of Oliver's trial. *See Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000); *see also State v. Huebler*, 128 Nev. ___, ___, 275 P.3d 91, 95 (2012) ("To prove a *Brady* violation, the accused must make three showings: (1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) prejudice ensued, i.e., the evidence was material." (quotation marks omitted)), cert. denied, ___ U.S. ___, 133 S. Ct. 988 (2013). Therefore, we further conclude that the district court did not err by determining that the State did not violate *Brady* or abuse its discretion by denying Oliver's motion to dismiss or, alternatively, for a mistrial. *See Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008) (we review a district court's denial of a motion to dismiss for an abuse of discretion); *Rose v. State*, 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007) (we review a district court's denial of a motion for a mistrial for an abuse of discretion).

> [FN1] To the extent it was raised, we also conclude that Oliver fails to demonstrate that he is entitled to relief based on the late disclosure of a taped interview of a third individual involved in the July 10th robbery.

(ECF No. 14-5 at 2-3.)

### 4.     Conclusion

As the Nevada Supreme Court reasonably determined, Oliver fails to demonstrate prejudice from the State's late disclosure of either piece of evidence: S.S.'s law enforcement interview or Belinda Kappert's identification of the second robber.

Turning first to S.S.'s law enforcement interview. It appears that the contents of that interview were inculpatory. Oliver's counsel explained that S.S. indicated in that interview that "he would call individuals to buy drugs[, a]nd then when they would come,

8

he would contact [Oliver] and others to let them know that there was a potential robbery victim." (ECF No. 13-31 at 8.) However, if Oliver's counsel used S.S.'s interview to impeach his trial testimony that it was Oliver's idea to commit the robbery (*see* ECF No. 13-40 at 84-85), the interview was potentially exculpatory. Importantly, though, S.S. also testified that he was arrested and prosecuted in juvenile court for conspiracy to commit robbery based on his participation in the robbery of Kappert. (ECF No. 13-40 at 87.) As such, the jury was aware that S.S.'s testimony indicating a lack of a conspiracy was incredible. Consequently, Oliver fails to establish there was a reasonable probability that, had S.S.'s interview statement—which also established there was a conspiracy between Oliver and S.S.—been earlier disclosed to the defense, the result of his trial would have been different. *See Bagley*, 473 U.S. at 682.

Turning to Belinda Kappert's identification of the second robber. Kappert testified that she "wasn't able to make a positive ID" of the second robber. (ECF No. 13-41 at 16.) Based on Officer Rapp's testimony that Kappert "was able to identify another suspect in [a] second lineup" (ECF No. 13-44 at 69), Kappert's testimony was subject to impeachment. However, because the jury was aware that Kappert's testimony regarding her identification of the second robber was incredible based on Rapp's testimony, Oliver fails to establish there was a reasonable probability that, had Kappert's second photographic identification been disclosed prior to the trial such that his counsel could have impeached Kappert during cross-examination—rather than through Rapp's testimony—the result of his trial would have been different. *See Bagley*, 473 U.S. at 682. In fact, during closing arguments, Oliver's counsel highlighted Kappert's incredibility on the issue, commenting that Kappert "testified multiple times, including here in court today, that she could not identify that second suspect. And you heard from our last officer here today that he did bring over another lineup and she did circle someone." (ECF No. 13-51 at 53-54.)

///

///

Therefore, because Oliver fails to demonstrate prejudice to support his *Brady* claims, the Nevada Supreme Court reasonably denied Oliver relief. Oliver is not entitled to federal habeas relief for Ground 1.

**B.  Ground 2—misjoinder**

In the remaining portion of Ground 2, Oliver alleges that his Fifth and Fourteenth Amendments rights to due process were violated when the state district court failed to sever the two robbery incidents.[4] (ECF No. 7 at 5.)

**1.  Background information**

Prior to trial, Oliver moved to sever the charges, arguing that "there [was] no mutually cross-admissible evidence" connecting the two robberies. (ECF No. 13-15 at 3.) The state district court denied the motion, finding that Oliver was not unfairly prejudiced by the joinder, the evidence of each robbery would be cross-admissible, and there was sufficient evidence that the alleged robberies constituted a common scheme or plan. (ECF No. 13-22 at 3.)

**2.  Standard for a misjoinder violation**

In the context of joinder of counts and defendants, the United States Supreme Court has stated: "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 466 n.8 (1986). The Ninth Circuit has declared this comment constitutes *dicta*. *See Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010) (discussing "trial severance where a co-defendant presents a mutually antagonistic defense"). Therefore, because there is no clearly established Supreme Court precedent, it is not clear that the Nevada Supreme Court acted contrary to United States Supreme Court precedent in denying Oliver's claim. *See* 28 U.S.C. § 2254(d)(1); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (explaining that "it cannot be said that the state court

---

[4]This Court previously found that the portion of this ground relating to judicial impartiality was unexhausted, and Oliver chose to abandon it. (ECF Nos. 21 at 5; 23.)

unreasonably applied clearly established Federal law" when United States Supreme Court precedent "give[s] no clear answer to the question presented" (internal quotation marks and alterations omitted)); *Martinez v. Yates*, 585 Fed.App'x. 460, 460 (9th Cir. 2014) ("There is no clearly established Supreme Court precedent dictating when a trial in state court must be severed.").

Assuming, *arguendo*, that the United States Supreme Court's footnote in *Lane* could be considered Federal law, Oliver must demonstrate the misjoinder of counts "'resulted in an unfair trial.'" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (quoting *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001)); *see also Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000). As to prejudice, it must be determined "'if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772). In making that determination, "the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Id.*

### 3.   State court determination

In affirming Oliver's judgment of conviction, the Nevada Supreme Court held:

> Second, Oliver contends that the district court erred by denying his pretrial motion to sever the charges. Oliver claims that charges stemming from the two robberies were improperly joined for trial because the offenses were not "connected together" and "there is no mutually cross-admissible evidence." We disagree.
>
> Under NRS 173.115(2), the State may charge two or more offenses in the same information, with a separate count for each offense, if the offenses are "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." If it appears that a defendant will be prejudiced by joinder, the district court may grant a severance. *See* NRS 174.165(1). Here, the district court conducted a hearing and found that "due to the close proximity in time and location and the similar modus operandi, there is sufficient evidence that the alleged robberies constitute a common scheme or plan." *See Middleton v. State*, 114 Nev. 1089, 1107, 968 P.2d 296, 308 (1998). The district court

> determined that "evidence of each robbery would be cross-admissible in separate trials" pursuant to NRS 48.045(2), *see Weber v. State*, 121 Nev. 554, 573, 119 P.3d 107, 120 (2005), and that Oliver was "not unfairly prejudiced by joinder of the charges," *see id.* at 574-75, 119 P.3d at 121; *see also Middleton*, 114 Nev. at 1108, 968 P.2d at 309 ("Misjoinder requires reversal only if the error has a substantial and injurious effect on the jury's verdict."). We conclude that the district court did not abuse its discretion by denying Oliver's motion to sever the charges. *See Weber*, 121 Nev. at 570, 119 P.3d at 119 (we review a district court's decision to join or sever charges for an abuse of discretion).

(ECF No. 14-5 at 4-5 (footnote omitted).)

### 4. Conclusion

As the Nevada Supreme Court, the final arbiter of Nevada law, reasonably determined, the evidence of the June 27, 2012 robbery incident and July 10, 2012 robbery incident would have been cross-admissible under Nevada law. *See* NRS § 48.045(2) ("Evidence of other crimes, wrongs or acts . . . may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). Indeed, both robberies had the same operative set of facts: the victims, who were either in possession of illegal substances or buying illegal substances, were lured to apartment complexes, and Oliver and a co-conspirator robbed them while they were in their parked vehicles. (*See* ECF Nos. 13-36 at 35-47; 13-41 at 2-6.)

Moreover, there is no indication in the record that the jury failed to distinguish between the evidence presented in the two robberies, and there was no significant disparity in the relative strength of the two cases because Oliver was identified by both victims during photographic lineups. (*See* ECF Nos. 13-39 at 112; 13-44 at 43-44.) Finally, because the jury was instructed that "[e]ach charge and the evidence pertaining to it should be considered separately" (ECF No. 13-48 at 6), "any prejudice was . . . limited." *Davis*, 384 F.3d at 639. Accordingly, because Oliver's trial was not rendered fundamentally unfair by the joinder of the two robbery incidents, the Nevada Supreme Court reasonably denied Oliver's claim. Oliver is therefore not entitled to federal habeas relief for Ground 2.

///

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner Donald Oliver. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, the Court finds that a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that Donald Oliver's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 7) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute William Gittere for Respondent Brian Williams.

The Clerk of Court is further directed to enter judgment accordingly and close this case.

DATED THIS 15th Day of November 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

13